```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
C.O., individually and on behalf of his                     :
minor child,                                                :
                                                            :
                              Plaintiff,                    :
                                                            :
                 -against-                                  :   22 Civ. 4507 (LGS)
                                                            :
NEW YORK CITY DEPARTMENT OF                                 :   ORDER
EDUCATION,                                                  :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

  Plaintiff Clifford Olshaker (who is no long proceeding pseudonymously), through counsel Law Offices of Irina Roller, PLLC ("LOIR"), brought this action against Defendant New York City Department of Education ("DOE") under the fee-shifting provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3), following an administrative decision in which Plaintiff prevailed. After LOIR and DOE agreed on a fee amount of $26,500 in settlement of this action, Olshaker took the position that he, and not LOIR, is entitled to the settlement proceeds. The dispute was referred to Magistrate Judge Jennifer E. Willis. On April 12, 2024, after receiving further submissions and holding two conferences, Judge Willis issued a Report and Recommendation (the "Report"), recommending that this action be dismissed because the Complaint lacked a proper plaintiff and was not validly filed. LOIR did not file an objection to the Report. For the following reasons, this action is not dismissed, and Defendant DOE is directed to pay LOIR fees of $26,500.

1

I.      BACKGROUND

The following facts are taken from the parties' submissions and representations before Judge Willis. At issue are whether Olshaker assigned the fee claim to LOIR, whether LOIR had authority to settle that claim and whether LOIR is entitled to the settlement proceeds.

A.      The Retainer Agreement

On February 15, 2018, Olshaker signed a retainer agreement with LOIR (the "Agreement") agreeing that the firm would represent him to obtain an appropriate educational program under the IDEA for his daughter for the 2018-2019 school year and to recover attorney fees and expenses in connection with such representation. The Agreement has four components of payment from the client. The first is a non-refundable retainer of $6,000 for all work up to and including the filing of a Hearing Request/Due Process Complaint against the DOE. This amount is chargeable to the client and is non-refundable even if LOIR later recovers fees from the DOE. The second component comprises fees relating to hearings: a payment of $1,650 is due for each hearing day, but the amount ultimately payable depends on the hours actually worked at specified hourly rates ("billable hours"). If the billable hours exceed $1,650 per hearing day, then Olshaker does not owe more than the $1,650 as long as he cooperates with attorney fee recovery from the DOE. If the billable hours are less than $1,650 per hearing day, the difference is refunded to Olshaker. The third component is the fee for any work after a final decision in the administrative matter (including, e.g., this proceeding), which is not recoverable from the DOE and is owed by Olshaker. The fourth component is a fee of 3.5% of any monetary award or settlement from the Impartial Hearing Process.

The Agreement states explicitly that both the client and the firm are relying on the IDEA's fee-shifting provision, and that the client "understands the importance of cooperating in the strategy of the Firm to recover fees." The Agreement requires Olshaker "to cooperate fully in all efforts to recover attorney fees and costs from the school district." Failure to cooperate "will result in the [c]lient being liable for the attorney fees and costs." The Agreement further states that the "[p]ayment of legal fees made by the DOE will not be considered client funds and will not be deposited in a client trust account." The Agreement specifies the order of payment of any fee awards from the DOE -- first to LOIR for any outstanding legal fees; then to the school if applicable; and last, any remainder to Olshaker.

### B. Billable Hours and Subsequent Payment

LOIR represented Olshaker in an administrative proceeding that culminated in a hearing before an Impartial Hearing Officer and a tuition award of $77,800 for the 2018-2019 school year. LOIR's billing records show $36,495 of billable hours for the administrative proceeding and $2,047 for the instant action, for a total of $38,542, including $402.50 in expenses.

LOIR has been paid a total of $9,473 for the 2018-2019 school year as follows: Olshaker wrote three checks totaling $6,000 for the retainer to LOIR (on February 16, 2018, August 14, 2018, and April 27, 2019), but paid nothing else out-of-pocket. LOIR recovered tuition of $77,800 for that year on behalf of Olshaker, which the DOE paid in two installments. First, on August 15, 2019, DOE paid LOIR $74,600, of which LOIR kept $9,361 and remitted the remaining $65,239 to Olshaker. Second, on March 2, 2020, DOE paid LOIR $3,200, of which

3

LOIR kept $112.  The total of $9,473 kept by LOIR included a $6,000 retainer[1] for the following 2019-2020 school year not at issue.  Therefore, for work relating to the 2018-2019 school year, LOIR received Olshaker's $6,000 retainer and kept $3,473 attributable to that year from DOE payments.  The sum of $9,473 consists of (1) the $6,000 retainer, (2) the 3.5% success fee of $2,723 and (3) a remaining $750, which is equivalent only to 5 hours for an advocate billing at $150 an hour, toward LOIR's billable hours for the administrative proceeding and this proceeding.

      C.      **LOIR's Fee Action**

The attorney-client relationship deteriorated.  On April 22, 2021, Olshaker terminated LOIR's representation and demanded immediate payment to him of funds not at issue here.  In response, LOIR acknowledged the termination, addressed the payment issues and included an Authorization to Accept Settlement for the 2018-2019 school year for Olshaker to sign and have notarized.  The Authorization to Accept Settlement stated that Olshaker, "having authorized [LOIR] to initiate claims on my behalf to secure an award of attorneys' fees for services performed [in] connection with the administrative review of my child's educational placement[,] [d]o now fully authorize [LOIR] to receive on my behalf sums paid by the [DOE] in full

---

[1] The conclusion that the $6,000 was a retainer for the 2019-2020 school year is based on what appears to be a billing system print-out attached as Exhibit F to the Declaration of Irina Roller at Dkt. 43-7; as well as an October 11, 2022, email between Roller and Olshaker at Dkt. 42-5. Olshaker asserts that this $6,000 should be credited toward the 2018-2019 school year at issue here, but has not submitted any document to substantiate that assertion.  The dispute is immaterial because the decision below is not affected by the year to which that $6,000 payment is assigned; even if the $6,000 were a payment for the 2018-2019 school year at issue, Olshaker still would not have "fully paid the Firm for services rendered and expenses incurred, [in which case] the Client assigns to the Firm this fee-recovery claim" as discussed below.  *See* Dkt. 43-1, § 4(f).

4

settlement of these claims." A notarized copy of the Authorization to Accept Settlement signed by Olshaker and dated April 30, 2021, is included in the record.

In June 2022, LOIR filed the instant action against DOE, seeking attorneys' fees related to the 2018-19 school year. On September 8, 2022, LOIR provided DOE with billing records showing $36,495 of billable hours for the administrative proceeding and $2,047 for the instant action, seeking $38,542 in total. The request covers $402.50 in expenses. After negotiations, LOIR and DOE agreed to a settlement amount of $26,500 and filed a notice of settlement on October 6, 2022.

On October 7, 2022, LOIR emailed Olshaker, asking him to sign a Release of the DOE from any claims arising from the 2018-2019 school year. LOIR stated that the signed Release would enable the DOE to process the payment effectuating the settlement of this litigation, which was "filed by our office against the New York City Department of Education for legal fees due to our office for the hearing and winning decision . . . against DOE for [school year] 2018-19." On October 10, 2022, Olshaker emailed back, attaching the signed and notarized Release and stating, "Please send the funds to my usual account." LOIR informed Olshaker that it would retain the DOE payment to cover a portion of the outstanding legal fees and waive the remainder. Olshaker contacted DOE and asked it to send him the money.

Olshaker, who is an attorney, filed an appearance in this action representing himself. He then filed a letter motion stating that LOIR had already been paid, he is no longer represented by LOIR and he had not authorized the filing of this action, and requesting that DOE be directed to remit the settlement funds to him directly rather than to LOIR. LOIR, through counsel, opposed Olshaker's motion. Olshaker, LOIR and DOE filed declarations and appeared before Judge

5

Willis. Judge Willis issued the Report, accepting DOE's argument that this action should be dismissed without payment by DOE of the agreed upon fee amount to either LOIR or Olshaker. LOIR did not file an objection, perhaps because Judge Willis at her second conference with the parties noted that she did not believe that LOIR "would be able to file an objection."

## II. STANDARD

In reviewing a Magistrate Judge's Report, a District Judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no objection is made to the report, the standard of review is clear error. *Kuan v. Notoriety Grp. LLC*, No. 22 Civ. 1583, 2023 WL 3936749, at *1 (S.D.N.Y. June 9, 2023). Clear error exists when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gardner v. Robinson*, No. 16 Civ. 1548, 2018 WL 722858, at *3 (S.D.N.Y. Feb. 6, 2018);[2] *Valk v. Hubbard*, No. 3:24 Civ. 3, 2024 WL 4799460, at *1 (N.D.N.Y. Nov. 15, 2024).

## III. DISCUSSION

### a. Authority to Sue

LOIR was authorized to bring this action by operation of an unambiguous provision of the parties' Agreement, which assigned the claim for fees to LOIR. Under New York law,[3] an

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

[3] New York law applies to this case. A federal court adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state. *Elliott v. Cartagena*, 84 F.4th 481, 496 n.14 (2d Cir. 2023). The forum state is New York. As the Agreement contains no choice of law provision, under the New York "center of gravity" approach, this Court applies the law of New York, "which has the most significant contacts with the matter in dispute." *RLI Ins. Co. v. AST Eng'g Corp.*, Nos. 20-214-CV, 20-596-CV, 2022 WL 107599, at *2 (2d Cir. Jan. 12, 2022) (summary order).

unambiguous contract "must be enforced according to the plain meaning" of its terms. *Grove Realty Enters., Inc. v. Budde Agency, Inc.*, 222 N.Y.S.3d 108, 111 (2d Dep't 2024). "Whether or not a contract is ambiguous is a question of law to be resolved by the courts." *MAK Techs. Holdings Inc. v. Anyvision Interactive Techs. Ltd.*, No. 61, 2024 WL 3055302, at *1 (N.Y. June 20, 2024). "[P]rovisions in a contract are not ambiguous merely because the parties interpret them differently." *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 668 N.E.2d 404, 406 (N.Y. 1996); *accord Falanga v. Hillabrant*, 176 N.Y.S.3d 88, 92 (2d Dep't 2022). A contract is not ambiguous if, "read . . . as a whole," the language is not "written so imperfectly that it is susceptible to more than one reasonable interpretation[.]" *MAK Techs.*, 2024 WL 3055302, at *1, *3; *see also In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016) ("[A] contract is not ambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion.").

The Agreement by its terms assigned the claim for fees to LOIR. The Agreement states that, "[u]nless the Client has fully paid the Firm for services rendered and expenses incurred, the Client assigns to the Firm this fee-recovery claim." The assignment is conditioned on "full[ payment] for services rendered." Full payment for services rendered unambiguously refers to the payment of LOIR's hourly rates, as evidenced by the Agreement read as a whole as explained below. LOIR has accrued fees of $36,495 for services related to the administrative proceeding and $2,047 in this action to recover attorneys' fees for a total of $38,542. LOIR has been paid a total of $9,473. Olshaker has not "fully paid" the $38,542 for "services rendered and expenses

7

incurred," and therefore has assigned to LOIR the fee-recovery claim for the 2018-19 school year.

The Report incorrectly concluded that "fully paid for services rendered" reasonably could refer to the Client's payment of only the $6,000 retainer. This conclusion is erroneous for two reasons. First, the retainer is only one of four components of the client payment provided for in Agreement as detailed above. (¶ 4.a.-b.). Second, the Agreement consistently reflects the parties' understanding that, independent of the structure of the client's payment obligations, LOIR ultimately will be paid for services rendered on an hourly basis from two sources, the client and the DOE under the fee shifting provisions of the IDEA. The Agreement specifies the hourly rates that LOIR will charge. (¶ 4.c.). The Agreement provides for a $6,000 "retainer," which typically refers to an initial, often partial, payment. The retainer is nonrefundable, even if LOIR recovers fees under the IDEA. (¶ 4.b.). The client may pay a specified amount for each hearing day and, depending on the time spent on the hearing (with a 2-hour minimum), LOIR will seek to recoup any shortfall from the DOE, and will refund any overpayment to the client. (¶ 4.a.-b.). The client will not be responsible for any shortfall as long as the client cooperates in the fee recovery process from DOE and does not settle the matter without attorney fees. (¶ 4.a.). If the matter is resolved in the client's favor during the regulatory "resolution period" and fee shifting is unavailable, then the client is "responsible for attorney fees incurred up until execution of the resolution agreement." (¶ 4.d.). Similarly, if the client settles with DOE and waives attorney fees, then the client will pay LOIR for legal services. (¶ 5.a.). Fees incurred after a final administrative decision are not recoverable from DOE and must be paid by the client. (¶ 4.e.). The Agreement explicitly states that both parties are relying on the IDEA's fee

shifting provisions and, "Not all fees and costs incurred can be recovered from the school district and will be the obligation of the Client." (¶ 4.g.). These provisions make sense only if fees "for services rendered" means fees accrued on an hourly basis. Accordingly, the condition precedent to the assignment of fee claims against DOE is the payment in full of LOIR's fees accrued on an hourly basis, and not the amount billed to or paid by the client.

Olshaker and DOE argued that the right to recover reasonable attorneys' fees belong to the prevailing parent, not the attorney. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I). But the analysis does not end there. Causes of action generally are freely assignable in New York except for a few narrow exceptions. N.Y. Gen. Obpl. L. § 13-101 ("Any claim or demand [except personal injury] can be transferred" unless otherwise barred by statute). An assignee typically "st[ands] in the shoes of" the assignor, acquiring the rights the latter had. *N.Y. & Presbyterian Hosp. v. Country-Wide Ins. Co.*, 958 N.E.2d 88, 93 (N.Y. 2011). "[T]he plain language of an assignment determines its breadth and scope." *Najjar Grp., LLC v. W. 56th Hotel LLC*, 965 N.Y.S.2d 720, 720 (1st Dep't 2013). Here, the Agreement states that, "[u]nless the Client has fully paid the Firm . . . the Client assigns to the Firm this fee-recovery claim," with no restrictions or further conditions. LOIR acquired Olshaker's legal right to claim attorney fees under the fee shifting provisions of the IDEA and divested him of his interest in the claim. LOIR, as assignee, became the sole party in interest with authority to bring this suit. *See Dedaj v. Berisha*, 125 N.Y.S.3d 297, 299 (2d Dep't 2020) (allowing an assignee's claim to proceed and denying a motion to dismiss for lack of standing).

DOE's argument that the Agreement implies a requirement of advance notice and an opportunity to pay as an alternative to assignment of the fee claim is unfounded. The provision

9

unambiguously provides for automatic assignment by operation of contract unless LOIR has been fully paid.

### b. Authority to Settle

Olshaker and DOE challenge the settlement, arguing that the decision to settle lies with the client, not the attorney, as stated in the Agreement. This argument is misplaced as LOIR was authorized to settle this case with DOE for two independent reasons. First, LOIR as the assignee inherited the full bundle of rights Olshaker had regarding the fee claim, including the right to settle. N.Y. Gen. Oblig. L. § 13-101 ("Any claim or demand [except personal injury] can be transferred" unless otherwise barred by statute). The assignment supersedes and extinguishes the client's right to approve a settlement because the client no longer has a legal interest in the settlement. *See James McKinney & Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.*, 462 N.E.2d 137, 139 (1984) ("[Assignor] is no longer the real party in interest . . . by virtue of this assignment . . . [and] had no right to maintain any of its claims."); *accord 298 Humboldt, LLC v. Torres*, 153 N.Y.S.3d 507, 510 (2d Dep't 2021). Second, LOIR received Olshaker's signed Authorization to Accept Settlement, which expressly authorized LOIR to receive "sums paid by [DOE] in full settlement of these claims."

Olshaker disputed the validity of the Authorization to Accept Settlement at the October 27, 2023, hearing. He did not deny that the signature was authentic and acknowledged "that [it did] appear to be [his] signature," but claimed that the authorization form "was not notarized in [his] presence," and that he had "no idea who that notary [was]." Judge Willis did not find credible Olshaker's suggestion that something is awry with the document. Because "a district judge should normally not reject" a magistrate judge's "credibility finding" absent a new evidentiary hearing, the Court agrees with the Report that the Authorization to Accept Settlement

10

was properly signed and notarized, and serves to authorize the settlement. *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008); *accord BakeMark USA LLC v. Negron*, No. 23 Civ. 2360, 2024 WL 3385641, at *3 n.5 (S.D.N.Y. July 12, 2024).

DOE argued that the settlement should be void for unilateral mistake because DOE was unaware of the legal fees LOIR had received. This argument is unpersuasive because rescission for unilateral mistake is available only if the mistake is induced by fraud, *Barclay Arms, Inc. v. Barclay Arms Associates*, 540 N.E.2d 707, 708-09 (N.Y. 1989); *accord Maynard v. Smith*, 171 N.Y.S.3d 537, 539 (2d Dep't 2022), and the record contains no assertion of fraud.

### c. Fee Award

LOIR is entitled to payment of the $26,500 settlement amount from DOE. Having assigned the claim against DOE by operation of contract as discussed above, as a matter of law, the assignment also conveyed the right to settle the claim and receive payment for it. *See N.Y. & Presbyterian Hosp.*, 958 N.E.2d at 93 ("[Assignee] st[ands] in the shoes of" assignor and acquires the rights the latter had).

Even without the assignment, as between LOIR and Olshaker, LOIR is contractually entitled to receive the fee payment from DOE pursuant to the Agreement between Olshaker and LOIR. The Agreement explicitly states that "[p]ayment of legal fees made by the DOE will not be considered client funds and will not be deposited in a client trust account." As detailed above, the Agreement consistently reflects the parties' understanding that LOIR will seek *for its own account*, and Olshaker must cooperate in LOIR's seeking, payment of LOIR's hourly fees from DOE. The relevant provisions include that the retainer is non-refundable even if LOIR recovers fees from DOE; that LOIR will seek to recover any shortfall in the hearing payment from DOE and that Olshaker will not be responsible as long as he cooperates in the effort; and that both

parties are relying on the fee shifting provisions of the IDEA. What is implicit in these provisions is spelled out in Paragraph 4.f. of the Agreement: "If the Client prevails in this matter, there may be a right to recover attorney frees from [DOE]. [The Client assigns that claim, as discussed above.] The Client agrees to cooperate fully in all efforts to recover attorney fees and costs from [DOE] . . . ." The paragraph ends with: "failure to cooperate fully . . . will result in the Client being liable for the attorney fees and costs." This means, for example, that, if this action were dismissed based on Olshaker's motion and DOE were relieved of its settlement obligation, Olshaker would be liable to LOIR for the full amount of accrued and still unpaid hourly fees, or approximately $30,000.

LOIR need not remit part of the DOE payment to Olshaker because, under the Agreement, the only provision for a refund of fees is that, if the client pays the flat daily hearing rate of $1,650 per hearing day and that amount exceeds the actual billable hours, then the excess is refunded to the client. Here, Olshaker did not pay the daily hearing amount, so the provision is inapplicable.

LOIR's fees and expenses for the 2018-19 school year totaled $38,542. LOIR has been paid a total of $9,473. LOIR is entitled to the DOE settlement of $26,500.

## IV.   CONCLUSION

For the foregoing reasons, LOIR is entitled to receive the $26,500 settlement that DOE agreed to pay to resolve this action. The Report's conclusion to the contrary constitutes clear error and is therefore rejected.

Dated: January 24, 2025
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE